# THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENTS, v. ANTONIO REGO, APPELLANT.

*Criminal trial — duty of the court to charge the jury as to the different grades of the crime of which the defendant is charged — when a conviction will be set aside because of error in the charge.*

The defendant was tried and convicted upon an indictment containing a single count charging him with murder in the first degree, in stabbing and killing one McGowan with a knife. Upon the trial the defendant's counsel requested the court to charge, among other things, that "when death is caused in a cruel and unusual manner, and in a heat of passion, the character of the crime depends upon the intent, and where it is done without intent to cause the death it is but manslaughter, and the intent must appear beyond a reasonable doubt." The court said that it thought that this was a good legal proposition, but that it did not see its applicability to this case.

The defendant's counsel then requested the court to charge the jury as to the different grades of manslaughter, to which the court replied that it thought that perhaps it would be better to so charge, rather than to deny the request, although it did not see the applicability of it. The court then read or stated the substance of sections 189 and 193 of the Penal Code, which define and divide the crime of manslaughter into two degrees.

*Held,* that if the evidence entitled the defendant to have the question as to whether he had committed a murder or a manslaughter submitted to the jury, the charge of the court was erroneous, as it was almost certain that under the charge as given the jury would not consider the case in connection with the crime of manslaughter.

That as the evidence did justify the submitting of that question to the jury, the verdict and conviction should be set aside.

APPEAL from a judgment of the Court of Oyer and Terminer, of Onondaga county, convicting the defendant of murder in the first degree, and from an order denying a motion for a new trial, made upon the grounds that the court had misdirected the jury, and that the verdict was contrary to law and against the evidence in the case.

*Oscar J. Brown,* for the appellant.

*Ceylon H. Lewis,* district attorney, for the People.

FOLLETT, J.:

January 17, 1885, Michael McGowan was stabbed with a knife, from the effects of which he shortly died. Antonio Rego was

indicted for murder in the first degree, the indictment containing but a single count. Upon the trial the jury found the defendant guilty of the crime charged. The defendant appeals from the judgment and seeks a reversal upon the ground, among others, that the court erred in instructing the jury in regard to the crimes within which the homicide might fall.

In the charge, the court explained to the jury the crime of murder in the first and second degree, and stated the facts which must have existed, and the state of mind which must have preceded or co-existed with the act to constitute those offenses.

Defendant's counsel requested the court to charge : " Sixth. When death is caused in a cruel and unusual manner, and in a heat of passion, the character of the crime depends upon the intent, and where it is done without intent to cause the death, it is but manslaughter, and the intent must appear beyond a reasonable doubt."

The COURT—" I think that is a good legal proposition. I don't see its applicability in this case." Exception for defendant.

DEFENDANT's COUNSEL—"I ask your honor to charge the jury that under this indictment, that if they find that he was not guilty of murder in the first or second degree, but was guilty of a slight and lesser grade of crime, they can find that under the indictment."

The COURT—" The rule of law is, that a party who is indicted for a higher offense may be convicted of any lesser offense that the evidence satisfies the jury he has been guilty of, any lesser offense in the same line of offenses, as, in this case, manslaughter in the first degree."

DEFENDANT's COUNSEL—"I ask your honor to charge the jury as to the different grades of manslaughter—what constitutes manslaughter in the different degrees, and the penalty connected therewith."

The COURT—" I think, perhaps, I better, rather than to deny that request, although I don't see the applicability."

Thereupon the court read or stated the substance of sections 189 and 193 of the Penal Code, which define and divide the crime of manslaughter into two degrees. While the propositions do not contain any explicit request to charge that if the jury found the homicide was committed without a design to effect death in the

heat of passion and by means of a " dangerous weapon," it was but manslaughter in the first degree, or if they found that it was committed in the heat of passion, but not by a "*deadly* weapon," it was manslaughter in the second degree; yet it appears from the record that the attention of the court was drawn to these points and that the requests were understood in that sense.

The terms " dangerous weapon " and " deadly weapon " have received judicial construction. (Abb. Law Dic., Lawson's Concordance.) But the present condition of the case does not require a determination as to whether they are, or are not, used synonymously in the sections referred to, and if synonymously, which term controls? It was the duty of the court to decide all questions of law which arose on the trial, and instruct the jury within what crimes the evidence and inferences, which the jury were authorized to draw, might bring the case. (Code Crim. Proc., § 417; *Foster* v. *The People*, 50 N. Y., 598.)

The sections of the statute defining manslaughter were either applicable or inapplicable to the case. If there was no evidence or inferences arising from the evidence, which might bring the case within the crime of manslaughter, it was the right and the duty of the court to so charge. (*Foster* v. *The People, supra; People* v. *Rogers*, 13 Abb. [N. S.], 370; *Buel* v. *The People*, 18 Hun, 487; S. C., 78 N. Y., 492). But if there was evidence or inferences arising from the evidence, which might bring the case within the crime of manslaughter, it was the duty of the court to so charge and point out the particular facts and states of mind which the jury must find to have existed, in order to bring the homicide within the crime of manslaughter. (Whar. Cr. Pl., § 709.) This the court failed to do, but instead read the sections defining manslaughter, preceded by the remark that the court did not see the applicability of the sections to the case. It is impossible to say that this direction was harmless to the defendant if he was entitled to have this question submitted to the jury, indeed, it is almost certain that under such a direction the jury would not consider the case in connection with the crime of manslaughter. (*The People* v. *Quin*, 1 Park., 340; *McKenna* v. *The People*, 81 N. Y., 360.)

In Quin's case the defendant stabbed and killed the decedent with a knife. The court charged : " Now, gentlemen, if you believe

this evidence, and believe that the crime was committed by the defendant under the circumstances as given to you by these witnesses, I see no ground to warrant you in finding the defendant guilty of manslaughter, but, in my judgment, he is then guilty of murder." The defendant was found guilty of murder, but the judgment was reversed upon the ground that the charge was more than an expression of an opinion upon the evidence, and amounted to a direction that a verdict of guilty of manslaughter would be a violation of law. To the same effect is *Templeton* v. *The People* (3 Hun, 357; S. C, 6 T. & C., 81), which was affirmed in 60 New York, 643.

It is argued that the jury having been properly instructed in respect to the crime of murder, and having found the defendant guilty of that crime, they necessarily found that the defendant intentionally killed the decedent, and thus passed upon the defendant's state of mind, and negatived the idea that the crime was manslaughter. Logically this position may be technically correct, but unfortunately jurors do not always reason logically, and in cases of this gravity the defendant is entitled, upon his request, to have every material issue which may arise out of the evidence presented to the jury, and affirmatively considered by them.

In *McNevins* v. *The People* (61 Barb., 307), it was held that unless there is an absence of facts and inferences pointing to the offense of manslaughter, the court has no right to exclude this crime from the consideration of the jury. In the case cited the defendant was convicted of murder in the first degree. Then, as now, the presence or absence of an intent to kill was the distinguishing feature between murder and manslaughter, and the jury must, in that case, as in the case at bar, have impliedly negatived the idea that the killing was unintentional, still the failure to instruct the jury in respect to the crime of manslaughter was held to be error, for which the judgment was reversed and a new trial granted, (*People* v. *Quin, supra.*)

The only remaining question to be considered in this connection is whether the jury might have inferred from the evidence, within legal rules, that the wound was inflicted in the heat of passion without intending to effect the death of the decedent.

The evidence shows that immediately preceding the homicide

the decedent, defendant and a number of dissolute persons of both sexes, and of various nationalities, were engaged in dancing and drinking in the public room of a groggery. A fight occurred in the street, and the revelers rushed out to witness or join in the affray. Precisely what the fight was about, or who were engaged in it, is not clearly disclosed. The wound was inflicted with a knife, but its size or character is not described, nor can it be inferred except from the wound inflicted. The decedent, in an *ante-mortem* statement, said, as testified by Dr. Totman: "He said he had been in a fight and an Italian stabbed him; he repeated this several times in substantially the same language."

Giovanni Montrone, a witness sworn for the defendant, testified: "I was at Villy's on the Saturday night in question; the time the man was hurt; I was there from seven o'clock until the dance was over; I went out of the place about half-past eleven; I saw a fight between a lot of Englishmen, and Antonio in the center of them. Q. Where were you when you saw them? A. I saw them as they were fighting in the road leading down the hill on the street; I don't know the name of it. By the Court: Q. Antonio Rego was in the center of them. A. Yes, sir; the fight, when I first saw them, was about half way down Bridge street, or about three-quarters of the way down; Rego and the crowd were about five-sixths of the way from Lock to Pearl on Bridge street; they were there fighting, and Antonio Rego in the center of them; all hands were fighting with their fists; they were talking very loud, but I didn't understand what they were saying; they were speaking in English; I couldn't recognize any of the persons in the crowd who were down Bridge street fighting; I saw an Englishman fall; don't know who he was; I saw Rego give a blow with his hand; they scattered; Antonio run and they run after him; there were about nine or ten in a crowd around Antonio; Antonio Rego was the only Italian in the crowd; the crowd were all under the influence of drink; the man who was dancing the clog in the dance house was pretty full."

It appears that, so far as it is known, the defendant and decedent had never had any previous difficulty or acquaintance. Without calling attention to the cases of homicide arising out of sudden affrays, or mutual combats; and without further discussing the evi-

dence, or intimating that the evidence or the inferences to be drawn from it should induce a jury to find, as a question of fact, a verdict of manslaughter, we are of the opinion that whether the crime was murder or manslaughter should have been unequivocally submitted to the jury.

For this error the judgment must be reversed and a new trial granted.

Hardin, P. J., and Merwin, J., concurred.

Judgment and conviction reversed and a new trial ordered in the Court of Oyer and Terminer of Onondaga county, to which court the proceedings and decision are remitted.